BOARD OF TRADE OF THE CITY OF CHICAGO, Kansas City Board of Trade, and The Minneapolis Grain Exchange, Plaintiffs,

v.

COMMODITY FUTURES TRADING COMMISSION, Defendant.

No. 98 C 5631.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 23, 1999.

Garrett B. Johnson, Donna M. Welch, Kirkland & Ellis, Chicago, IL, for plaintiffs.

Susan A. Berkowitz, Commodity Futures Trading Commission, Chicago, IL, J. Douglas Richards, Nancy R. Page, Daniel R Waldman, Janene M. Smith, Beth G. Pacella, Commodity Futures Trading Commission, Washington, DC, for defendant.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The Board of Trade of the City of Chicago, the Kansas City Board of Trade, and the Minneapolis Grain Exchange brought this action against the Commodity Futures Trading Commission [the "Commission"], seeking judicial review of the Commission's approval of the Cantor Financial Futures Exchange [the "Cantor Exchange"] as a contract market. The Commission moves to dismiss for lack of subject matter jurisdiction and failure to state a claim. The plaintiffs move for summary judgment, and the Commission has filed a cross-motion for summary judgment. For the following reasons, the Commission's motions to dismiss are denied, and its motion for summary judgment is granted. The plaintiffs' motion for summary judgment is denied.

*Background*

In January 1998 the Cantor Exchange applied to the Commission for designation as a contract market for trading on certain United States Treasury futures contracts. On September 4, 1998, the Commission approved the Cantor Exchange's contract market designation application. Under 7 U.S.C. § 7, the Cantor Exchange, as an applicant exchange, was required to meet numerous requirements, including showing that its operations would not be "contrary

to the public interest," before being approved as a contract market. The plaintiffs argue that the Commission never made the required finding on the public interest issue and other issues, that the Commission held the Cantor Exchange to a different, lower regulatory standard than other futures exchanges, that the Commission failed to address or respond to material public comments raised by the plaintiffs, and that the Commission failed to provide notice or an opportunity to comment on the Cantor Exchange's final application. Count I of the complaint alleges that for these reasons the Commission's approval of the Cantor Exchange was arbitrary, capricious, and an abuse of discretion and should be set aside under the Administrative Procedure Act, 5 U.S.C. § 706. Count II requests that all transactions on the Cantor Exchange be declared null and void under 5 U.S.C. § 706 as not in accordance with the law.

### Subject Matter Jurisdiction

■ The Commission argues that the complaint should be dismissed for lack of subject matter jurisdiction because the Commodity Exchange Act precludes judicial review of the Commission's approval of contract market designations. The Administrative Procedure Act does not confer a cause of action to the extent the underlying statute precludes judicial review. 5 U.S.C. § 701(a)(1). When determining whether judicial review is precluded by a statute, courts recognize a "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986). This presumption is overcome by a showing of "clear and convincing evidence" of congressional intent to preclude review. *Block v. Community Nutrition Inst.,* 467 U.S. 340, 350–51, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984). The "clear and convincing" standard:

is not a rigid evidentiary test but a useful reminder to courts that, where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative

action is controlling. That presumption does not control in cases [where] the congressional intent to preclude judicial review is 'fairly discernible' in the detail of the legislative scheme. *Id.* at 351, 104 S.Ct. 2450.

■ Under the Commodity Exchange Act, futures contracts must be traded on exchanges, called boards of trade, that have been approved by the Commission as "contract markets." 7 U.S.C. § 6(a). The approval process under which a board of trade is initially designated as a contract market is governed by 7 U.S.C. §§ 7 and 8. Section 7 provides that the Commission is authorized to designate a board of trade as a contract market when the board of trade complies with numerous statutory requirements, including the requirement that transactions "will not be contrary to the public interest." 7 U.S.C. § 7(7). Section 8 provides that "[t]he Commission shall approve or deny an application for designation as a contract market within one year of the filing of the application." 7 U.S.C. § 8(a). Section 8 also provides that if the Commission denies an application, it must state the reasons and give the board of trade an opportunity for a hearing before the Commission, "with the right to appeal an adverse decision after such hearing to the court of appeals as provided for in other cases in subsection (b) of this section." 7 U.S.C. § 8(a). Subsection (b) addresses suspensions and revocations of contract market designations, and states that the appropriate court of appeals is "the court of appeals for the circuit in which [the board of trade] has its principal place of business...." 7 U.S.C. § 8(b).

The Commission's argument is essentially that, by allowing boards of trade to seek judicial review of their designation denials in the courts of appeals, Congress has precluded competing boards of trade from seeking judicial review of designation approvals in the district courts. The plaintiffs respond that the statute is merely silent on the issue of judicial review of application approvals, and that the pre-

sumption favoring review is therefore controlling. I agree. Approval for designation as a contract market is a final agency action, which is presumptively reviewable under the Administrative Procedure Act. The Commission has not pointed to evidence of congressional intent to preclude judicial review that is " 'fairly discernible' in the detail of the legislative scheme." *Block*, 467 U.S. at 351, 104 S.Ct. 2450. This it not a case like *Block*, where the statute expressly authorized only one class of people to seek judicial review of a certain type of agency decision.[1] Instead, the Commodity Exchange Act provides for specific procedures—including an express authorization of who may seek judicial review—for one type of agency action, denials, and no procedures for another type of agency action, approvals. This legislative scheme leaves substantial doubt as to whether Congress intended entirely to preclude judicial review of approvals, and the strong presumption in favor of review accordingly applies.

■ The Commission also argues that 7 U.S.C. § 8(a) provides for exclusive original jurisdiction in the court of appeals where the board of trade is located, and that judicial review in this court would interfere with that original jurisdiction. Section 8(a), however, only gives the court of appeals jurisdiction for denials after the Commission has held a hearing on the record. Jurisdictional lines are therefore not "drawn on a case by case basis," *Denberg v. United States R.R. Retirement Bd.*, 696 F.2d 1193, 1197 (7th Cir.1983), but on the type of agency action involved. In addition, the legislative history cited by the Commission in support of its motion to dismiss is unpersuasive. As discussed above, that Congress provided for specific procedures for review of denials is not clear and convincing evidence that it intended to preclude judicial review of approvals. Furthermore, legislative history indicating congressional intent to speed up the process by which the Commission reviews applications is not enough to overcome the presumption that the Commission's decision is subject to judicial review. The plaintiffs' motion to dismiss the complaint based on the preclusion of judicial review in the Commodities Exchange Act is therefore denied.[2]

### Failure to State a Claim

■ The Commission also moves to dismiss the complaint for failure to state a claim. First, the Commission argues that the plaintiffs were not entitled to any notice and comment on the final revisions made to the Cantor Exchange's application in August 1998 and that in any case, they had substantial opportunity to comment. The complaint alleges that the Commission failed to provide notice or opportunity to be heard on the final Cantor Exchange application, and that the review process on the application was contrary to past practice by the Commission. Both the plaintiffs and the Commission have filed motions for summary judgment on the notice and comment issue. By extensively referring to the administrative record in the motion to dismiss, the Commission has essentially conceded that the questions regarding notice and comment cannot be decided without reference to materials out-

---

1. In *Block,* milk consumers brought an action to obtain judicial review of orders issued by the Secretary of Agriculture under the Agricultural Marketing Agreement Act of 1937. *Block,* 467 U.S. at 341, 104 S.Ct. 2450. The statute provided a mechanism for dairy handlers to obtain judicial review. *Id.* at 346, 104 S.Ct. 2450. The Supreme Court held that under the statutory scheme, milk consumers were not entitled to judicial review, where handlers had similar interests as consumers and could "therefore be expected to challenge unlawful agency action and to ensure that the

statute's objectives will not be frustrated." *Id.* at 352, 104 S.Ct. 2450.

2. The Commission also moves to dismiss Count II for lack of subject matter jurisdiction and failure to join necessary parties, arguing that transactions made on the Cantor Exchange are not agency actions, findings, or conclusions and cannot be declared null and void under the Administrative Procedure Act. Because the Commission's motion for summary judgment is granted, this motion is denied as moot.

side the complaint. Therefore the motion to dismiss is denied.

Second, the Commission argues that its "public interest" finding is unreviewable under 5 U.S.C. § 701(a)(2), because it is "committed to agency discretion by law." The exception in § 701(a)(2) is very narrow: "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). *Heckler* involved a decision by the Food and Drug Administration not to undertake an enforcement proceeding. The Court emphasized that § 701(a)(2) is a narrow exception to reviewability, but that "within that exception are included agency refusals to institute investigative or enforcement proceedings, unless Congress has indicated otherwise." *Id.* at 838, 105 S.Ct. 1649. The Commission has not cited any authority in support of its contention that public interest determinations are, as a matter of law, unreviewable, and the motion to dismiss is accordingly denied.

### Summary Judgment

■ The parties have filed cross-motions for summary judgment regarding whether the Commission's approval of the Cantor Exchange's application for a contract market designation was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). The scope of judicial review under § 706(2)(A) is narrow. *Sierra Club v. Marita*, 46 F.3d 606, 619 (7th Cir.1995). When evaluating whether an agency action is arbitrary, capricious, or contrary to law, " 'the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' " *Id.* (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). A court may not substitute its own judgment for the judgment of the agency, and the party challenging the

agency action bears the burden of proof. *Id.* An agency violates the Administrative Procedure Act when it:

'has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise[.]' *Id.* (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)).

The plaintiffs submit four grounds for their summary judgment motion. First, they argue that the Commission's approval of the Cantor Exchange as a contract market deviated from the Commission's "open and competitive" trading mandates. Second, the plaintiffs argue that the Commission's finding that terminal operators are not "floor brokers" is contrary to the plain meaning of the Commodity Exchange Act. Third, the plaintiffs argue that the Commission failed to respond to material comments that approving the Cantor Exchange as a contract market would be contrary to the public interest. Fourth, the plaintiffs argue that the Commission rushed to judgment by not resoliciting comment on the final Cantor Exchange application.

### A. "Open and Competitive" Trading

■ The plaintiffs argue that the Cantor Exchange's provision for "exclusive time trading" is a deviation from "open and competitive trading," which is required by Commission Regulation 1.38, 17 C.F.R. § 1.38. The Commission interpreted this regulation to include exclusive time trading as proposed by the Cantor Exchange application. Regulation 1.38 requires that:

All purchases and sales of any commodity for future delivery, and of any commodity option, on or subject to the rules of a contract market shall be executed openly and competitively by open outcry or posting of bids and offers *or by other*

*equally open and competitive methods,* in the trading pit *or ring or similar place provided by the contract market* . . . (emphasis added).

The Division of Trading and Markets memorandum extensively addressed concerns about exclusive time trading with respect to the requirement of open and competitive trading, and presented a reasoned basis for the Commission's finding. (A.R. 124 at 40–68). The plaintiffs argue that the explanation is insufficient because it did not address a previous decision by the Commission relating to a different set of rules proposed by a different contract market. However, provided an agency's interpretation of its own regulations does not violate the Constitution or a federal statute, it must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " *Stinson v. United States,* 508 U.S. 36, 45, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (quoting *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945)). The Commission thoroughly explained its opinion that the structure of the Cantor Exchange's exclusive time trading is open and competitive trading within the meaning of Regulation 1.38. The interpretation is not plainly erroneous or inconsistent with the language of the regulation, which allows "other" competitive methods, and it is entitled to deference.

### B. Terminal Operators

■ The plaintiffs next argue that the Commission acted contrary to law in determining that the Cantor Exchange terminal operators were not "floor brokers" under 7 U.S.C. § 1a(8). Section 1a(8) defines "floor broker" as "any person who, in surrounding any pit, ring, post, or other place provided by a contract market for the meeting of persons similarly engaged, shall purchase or sell for any other person any commodity for future delivery on or subject to the rules of any contract market."

Recognizing "[t]he novel nature of [the Cantor Exchange's] trading system," the Commission determined that the Cantor Exchange terminal operators, who commu-nicate with Cantor Exchange traders and enter orders into the Cantor Exchange's computerized system, are more like clerical employees than floor brokers. (A.R. 124 at 38). The plaintiffs claim that in making this determination the Commission rewrote rather than interpreted the statute. The administrative record, however, belies such a claim. The Division of Trading and Markets memorandum provided a reasoned analysis of the Commission's treatment of terminal operators, taking into consideration the language of 7 U.S.C. § 1a(8) and the actions of the terminal operators:

[Terminal operators] would not solicit or accept orders from public customers, nor could their entry of [the Cantor exchange] Traders' instructions properly be construed as floor brokerage. Section 1a(8) of the Act and Commission Regulation 1.3(n) define floor broker as 'any person who in [any] place provided by a contract market . . . shall purchase or sell for any other person any commodity for future delivery on or subject to the rules of any contract market.' [Terminal operators] would neither buy nor sell futures contracts for another person. On [the Cantor Exchange], like on other electronic systems, orders to buy and sell would be matched by the computer according to the rules of the System's algorithm. The only activities that would characterize brokering that would be carried out by natural persons on [the Cantor Exchange] would be performed by [the Cantor Exchange] Traders. (A.R. 124 at 109–110).

The Commission's conclusion that terminal operators would neither buy nor sell futures contracts for another person applies the plain language of the statute to the activities of the terminal operators. The Division of Trading and Markets has apparently adopted the same view with respect to order entry clerks in another trading system. (A.R. 124 at 38 n. 78). To the extent that the Commission may have interpreted the statute on account of the novel nature of the Cantor Exchange trading system, its reasoned analysis is enti-

tled to due deference. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

## C. Public Interest

The plaintiffs' objection to the Commission's public interest determination rests on two grounds: (1) the Commission ignored whether the Cantor Group's control of the Cantor Exchange was contrary to public interest; and (2) the Commission overlooked whether the Cantor Exchange's trading rules would lead to market fragmentation.

### 1. The Cantor Group

▇▇ The plaintiffs argue that the Cantor Group is a proven wrongdoer, and that it was arbitrary and capricious for the Commission not to respond to comments regarding the public interest issues raised by the Cantor Group's "control" of the Cantor Exchange.[3] In January 1997 the Commission found Cantor Fitzgerald & Co., the Cantor Group's futures commission merchant subsidiary, liable for fraud. Commission Regulation 1.63, 17 C.F.R. § 1.63, prohibits individuals who commit disciplinary offenses from serving on self-regulatory organization governing boards or committees. The Commission has interpreted this Regulation to mean that only " 'natural persons who themselves commit disciplinary offenses' " should be disqualified. (A.R. 124 at 14).

The plaintiffs acknowledge that the Commission addressed concerns about its interpretation of Regulation 1.63, but argue that the Commission did not specifically address public interest issues. The administrative record, however, reveals that the Commission did consider commentators' concerns about the Cantor Group's ability to "control" the Cantor Exchange's Board of Directors:

> The Division notes that [the Cantor Exchange's] Board, like all contract market governing boards, regardless of how and by whom it is selected must comply with

Regulation 1.64(b)'s requirement that it fairly represent the diversity of membership interests at the contract market. The Commission also would be able to monitor compliance with the requirement closely.... The Division further notes that NYCE and its subsidiary exchanges have historically accorded a high level of governing board representation to commercial interest representatives.... [A]ll governing boards, and thus members, are subject to a number of ` statutory and regulatory requirements intended to ensure the integrity of their decision-making processes.... The Division believes that [the Cantor Exchange's] proposal would satisfy these objective standards. (A.R. 124 at 18–19).

The Commission thus considered commentators' concerns about the Cantor Group's disciplinary history beyond technical compliance with Regulation 1.63, and specifically addressed mechanisms that monitor the integrity of the Cantor Exchange Board. In light of this consideration, the plaintiffs have not shown that the Commission's approval order was arbitrary and capricious.

### 2. Market Fragmentation

▇▇ The plaintiffs also have not shown that the Commission overlooked whether the Cantor Exchange will fragment treasury futures markets contrary to the public interest. The administrative record reveals that the Commission addressed concerns about market fragmentation, specifically including concerns raised by one of the plaintiffs, the Chicago Board of Trade. (A.R. 124 at 106–109). The plaintiffs are unsatisfied, arguing that the Commission should have spent more time addressing particular objections relating to market fragmentation and an economist's report that was filed three days before the Commission's decision. There is, however, no obligation under the Administrative Procedure Act for an agency to reference all of the issues raised in comments, even

---

**3.** Commentators were concerned with the Cantor Group's ability to name eight of thir

teen Cantor Exchange directors. (A.R. 124 at 18).

when it is adopting a rule. *St. James Hosp. v. Heckler*, 760 F.2d 1460, 1469 (7th Cir.1985). The economist that submitted the report also testified during the hearing on August 11, 1998. The Commission addressed the major issue of policy about which the commentators expressed concerns, market fragmentation, in a reasoned manner and based on factors that are not arbitrary and capricious.

### D. Comment on the Final Application

The plaintiffs further argue that the Commission "rushed to judgment" by not resoliciting comment on the final Cantor Exchange application. The Commission has found that "routine publication of designation applications is in the public interest." 53 Fed.Reg. 30671 (1988). The basis for the plaintiffs' argument is that the public interest is not served when an applicant substantially changes its proposal after the comment period is over, and the agency fails to resolicit public comment before making a decision. When the Commission formalized its procedures and established a uniform comment period for designation applications, the Commission provided for a 30–day period. 53 Fed.Reg. 30671, 10672 (1998). The Commission noted that, "[o]f course, where an application for designation raises particularly complex or novel issues, a longer comment period may be appropriate.... [I]n those instances, the Commission, in its discretion, may determine on a case-by-case basis to provide for a longer comment period." 53 Fed.Reg. 30671, 30672 (1988).

In the instant case, the Commission provided for a comment period of over six months, which ended in July 1998. A public hearing was held in August 1998. In the end of August 1998, the plaintiffs requested that the Commission delay final action and provide them with a further opportunity to comment, and that the Commission consider whether any of the August submissions were of "major economic significance." (A.R.121). Under the Commodities Exchange Act, thirty days before approving any rules of major economic significance, the Commission must publish notice. 7 U.S.C. § 7a(a)(12). "The determination by the Commission whether any such rules are of major economic significance shall be final and not subject to judicial review." 7 U.S.C. § 7a(a)(12). The Commission did not determine that the rules were of major economic significance. In addition, the plaintiffs' criticism regarding the Commission's "rush to judgment" is addressed and rejected in the Division of Trading and Markets memorandum. (A.R. 124 at 116). Although the plaintiffs characterize the changes to the Cantor Exchange's application as substantial and necessitating further public comment, it was within the Commission's discretion to determine that no further public comment was necessary, and there is no indication that its decision was arbitrary or capricious.

### Conclusion

For the reasons discussed above, the Commission's motions to dismiss are denied, and its motion for summary judgment is granted. The plaintiffs' motion for summary judgment is denied.